50

United States District Court
Southern District of Texas
ENTERED

JUL 2 6 1999

Michael N. Milby, Clerk of Court
By Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# -BROWNSVILLE DIVISION -

| | |
|---|---|
| EDWARD ARTHER GOMEZ, §<br>§<br>vs. §<br>§<br>JONAS SAENZ, Individually and as an §<br>Agent and/or Employee of State Farm §<br>Insurance Company, MIKE SANCHEZ, §<br>Individually and as an Agent and/or §<br>Employee of State Farm Insurance §<br>Company, and JEFFREY SMITH, §<br>Individually and as an Agent and/or §<br>Employee of State Farm Insurance §<br>Company, and STATE FARM §<br>INSURANCE COMPANY §| CIVIL ACTION NO. B-97-114 |

## MEMORANDUM AND OPINION

The parties in the instant case waived their right to proceed before a District Judge and consented to have the Magistrate Judge conduct all proceedings pursuant to 28 U.S.C. § 636(c).[1]

Pending before this Court is Defendants' Jonas Saenz ("Saenz"), individually and as an agent and/or employee of State Farm Automobile Insurance Company, Mike Sanchez ("Sanchez"), individually and as an agent and/or employee of State Farm Automobile Insurance Company, Jeffrey Smith ("Smith"), individually and as an agent and/or employee of State Farm Automobile Insurance Company, and State Farm Mutual Automobile Insurance Company ("State Farm") Motion for Summary Judgment.[2] Plaintiff Edward Arther Gomez ("Gomez") has filed his Response to

---

[1] Docket No. 33.

[2] Docket No. 9.

Defendants' Motion for Summary Judgment. [3]

In addition, the parties have filed the following responsive pleadings: Defendants' Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment[4]; Plaintiff's First Supplement to his Response to Defendants' Motion for Summary Judgment[5]; Defendants' Reply to Plaintiff's First Supplement to his Response to Defendants' Motion for Summary Judgment[6]; and Plaintiff's Response to Defendants' Reply to Plaintiff's First Supplement to his Response to Defendants' Motion for Summary Judgment[7]. For the reasons set forth below, the Defendants' Motion for Summary Judgment will be granted.

## FACTUAL BACKGROUND

The following factual background is derived from the Plaintiff's Original Complaint[8], the Defendants' Motion for Summary Judgment[9], the Plaintiff's Response to Defendants' Motion for Summary Judgment[10], and the supporting exhibits therein.

Gomez was formerly employed by State Farm in several South Texas offices as an auto estimator from October 31, 1983 to April 15, 1996. Gomez was employed in the Harlingen, Texas

---

[3]Docket No. 22.

[4]Docket No. 26.

[5]Docket No. 29.

[6]Docket No. 31.

[7]Docket No. 32.

[8]Docket No.1.

[9]Docket No. 8.

[10]Docket No. 22.

("Harlingen") office from October 31, 1983 to 1987[11]. He later worked in the Weslaco,Texas

("Weslaco") office. Gomez subsequently worked in McAllen, Texas ("McAllen") from 1990 until

his discharge in April 1996.

As an estimator, Gomez was responsible for inspecting damaged motor vehicles and providing

estimates as to the extent of damage and costs for repair. Gomez alleges that during his employment

in Harlingen, he was the subject of racial comments by his co-workers and supervisors. Such

comments included "pachuco," "chon," "chango," "grease monkey," "wet back," and "illegal."

Gomez avers that such slurs created a hostile work environment.

Gomez contends that in 1990, while employed in McAllen under the supervision of Defendant

Smith, the hostility of the work environment increased. Gomez claims that Smith singled out his

work, pulled estimate drafts from the trash to present to other supervisors, reinspected his work,

rewrote Gomez's estimates, visited body shops to criticize Gomez's work, and constantly criticized

the manner in which Gomez photographed cars. On or about June 3, 1992, Gomez's attorney issued

a letter to Edward B. Rust ("Rust"), State Farm President, and Alan Lee Gamel ("Gamel"), Smith's

supervisor, complaining about Smith's alleged discriminatory conduct and the hostile work

environment. On June 18, 1992, State Farm issued Gomez's attorney a letter encouraging Gomez

to avail himself of State Farm's "open door" policy to discuss specific acts of harassment with the

Regional Personnel Office.

The year following his complaint to State Farm, Gomez contends that he received a below

"expected performance" evaluation . Gomez was re-evaluated in 1994 and 1995, and received an

---

[11]The pleadings fail to allege with particularity the dates of employment. The dates noted in the factual summary are a result of this court's review of the record.

"expected performance" with a pay increase in 1995. Gomez further alleges that days following his 1995 performance evaluation, Defendant Saenz, Gomez's estimatics supervisor from December of 1995 to June of 1997, unjustifiably issued three written warnings regarding Gomez's work performance. Gomez further claims that Saenz and Defendant Sanchez would visit body shops to inquire as to quality of Gomez's work and use this information to reprimand him. Gomez claims that Saenz was unqualified to make such assessments given no prior experience in making estimates and that these complaints were merely a pretext to secure Gomez's termination. Further, on March 15, 1996, Monica Goulding-Young ("Young"), State Farm Senior Human Resource Specialist, met with Gomez solely to discuss his letter to Saenz alleging that Saenz had discriminated against him because "of his Mexican heritage."

On or about April 16 or 15, 1996, two months after his last expected performance evaluation and pay increase, Gomez was discharged by State Farm. Gomez was advised by Young that he was terminated due to his inability to accomplish certain job tasks and his poor attitude with co-workers, management, and third party vendors[12]. His termination and the Defendants' conduct, Gomez contends, constitutes retaliatory conduct stemming from Gomez's letter to State Farm.

Subsequently, Gomez was employed by West Point Lincoln Mercury ("West Point") in Houston, Texas and later discharged. Gomez contends that his termination from West Point was based on a demand by State Farm to discharge Gomez or State Farm would cease doing business with its body shop. Gomez claims the Defendants have lied to prospective employers about his past employment history and "blackballed" him. As a result of this conduct, Gomez claims he has been

---

[12]The incident allegedly prompting Gomez's discharge was a verbal outburst at Van Burkleo Motors wherein he asked Steve Reyes, a Hispanic vendor, "Who do you think you are God?" "Do you think we need to kneel down before you?"

unable to obtain other gainful employment.

## GOMEZ'S CLAIMS

### *Title VII*

Gomez argues that the Defendants violated the provisions of Title VII of the Civil Rights Act of 1964 and 1991, 42 U.S.C. §§ 2000e - 2000e-17. Specifically, Gomez contends that the Defendants discriminated against him because of his race, that he endured a hostile work environment as a result of the individual Defendants' discriminatory conduct, and that the Defendants retaliated against him for having brought the alleged conduct to the attention of Defendant State Farm.

### *Section 1981*

Gomez brings a cause of action pursuant to 42 U.S.C. § 1981 claiming that the Defendants alleged intentional discriminatory conduct interfered with the terms and conditions of his employment.

### *Intentional Infliction of Emotional Distress*

Gomez claims that the Defendants discriminatory and retaliatory conduct was intentional and/or reckless, extreme and outrageous and proximately caused Gomez severe emotional distress. Specifically, Gomez contends that he was "forced to endure a working environment charged with epithets, and that he was fired in direct violation of congressional policy."[13] Such claims, argues Gomez, are sufficient to permit recovery for intentional infliction of emotional distress.

### *Negligent Hiring/Training/Retention*

Gomez argues that Defendant State Farm has a duty to select, train, and supervise its employees in such a manner that Gomez not be injured, and to discharge those employees who failed to heed such training and supervision. Gomez alleges that as a result of State Farm's failure to

---

[13]Docket No. 22, p. 39.

supervise the individual Defendants and stop their conduct, State Farm has breached its duty. Gomez

contends that he has suffered damages as a proximate result of State Farm's breach.

*Tortious Interference with Contract*

Gomez sets forth a claim for tortious interference with contract based on the Defendants'

alleged demand to West Point to discharge him.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper only when it appears that there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Ellison*

*v. Connor,* 153 F.3d 247, 251 (5th Cir. 1998). Disputes concerning material facts are genuine "if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Douglass*

*v. United Auto Ass'n,* 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) (quoting *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue is "material" if it involves a fact that might affect

the outcome of the suit under governing law. *Douglass,* 79 F.3d at 1429. Once the moving party

presents the district court with a properly supported motion for summary judgment, the burden shifts

to the nonmoving party to show that summary judgment is inappropriate. *Morris v. Covan*

*Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). In doing so, the nonmoving party may

not rest upon the mere allegations or denials of its pleadings, and unsubstantiated or conclusory

assertions that a fact issue exists will not suffice. *Anderson,* 477 U.S. at 256. Rather, the nonmoving

party must go beyond the pleadings and designate specific facts showing there is a genuine issue for

trial. *Stults v. Conoco, Inc.,* 76 F.3d 651, 656 (5th Cir. 1996). Summary judgment evidence is

viewed in the light most favorable to the party opposing the motion. *Eastman Kodak v. Image*

*Technical Services,* 504 U.S. 451, 456-58 (1992). In addition, factual controversies are resolved in

favor of the nonmovant, but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## FEDERAL CLAIMS

### *Statute of Limitations*

1.    Title VII

Employees wishing to file suit under Title VII must first file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within three hundred days of the alleged unlawful employment practice.  42 U.S.C.A. § 2000e-5(e)(1).

Defendants argue that several of Gomez's allegations of retaliation and discrimination are barred by the Title VII statute of limitations.  Gomez filed his charge of discrimination on September 14, 1996.[14]  The Defendants contend that, inasmuch as Gomez failed to filed any charge of discrimination within the three hundred days after the alleged discriminatory and retaliatory incidents, the allegations are barred by limitations.  Gomez argues that his allegations are not time barred as he has established a "continuing violation" theory whereby the statute of limitations does not begin to run until the last discriminatory act has occurred.

Before calculating the three hundred day statutory period, this court must first identify "the alleged unlawful practice"on which Gomez asserts his claims.  Gomez's garrulous style of pleading, a mask for the lack of detail, creates some confusion as to whether Gomez bases his discrimination and retaliation claims on the alleged history of discrimination and retaliation by the Defendants or solely on the alleged discrimination and retaliation manifested in Gomez's April 15, 1996, termination.

[14]Docket No. 9, Ex. C

7

As a basis for his Title VII and § 1981 causes of action, Gomez alleges in his Original Complaint that his termination was a proximate result of his reporting the alleged racial misconduct to State Farm and "because he is Mexican.[15]" In addition, Gomez alleges that the Defendants' use of racial remarks and unjustified reinspection and critique of his work created a hostile work environment. *Id.* Looking at the language in isolation, Gomez appears to allege claims based on theories of hostile work environment and discriminatory and retaliatory discharge. In fact, in his Response to the Defendants' Motion for Summary Judgment, Gomez narrows his Title VII contentions to having established a prima facie case of hostile work environment and retaliation.[16] Construing Gomez's pleadings in a light most favorable to the nonmovant, this Court finds that Gomez's Title VII claims are based on theories of hostile work environment and discriminatory and retaliatory discharge.

Further, this Court finds that the "alleged unlawful employment practice" on which Gomez asserts his discriminatory and retaliatory discharge claims is his termination from State Farm. As to the hostile work environment claim, this Court finds that Gomez's claim is based on two allegations: the alleged name calling and the alleged unjustified critique and review of his work performance.

For Title VII claims based on an employee's termination, the limitations period begins to run at the time of termination. *Berry v. Board of Sup'rs of L.S.U.,* 715 F.2d 971 (5th Cir. 1983). Gomez was terminated from his position with State Farm on April 15, 1996. He filed his EEOC charge on September 14, 1996, within the three hundred period allowed by the statute. Accordingly, the allegations that form the basis of Gomez's discriminatory and retaliatory discharge claims, are not time barred.

---

[15]Docket No. 1.

[16] A review of the pleadings indicates no other alleged theory of recovery under Title VII.

8

A plaintiff asserting a Title VII claim based on a hostile working environment must file his charge within three hundred days of the alleged unemployment practice. In the instant case, Gomez was required to file his charge within three hundred days of the alleged name calling and unjustified critique of his work. However, in his Response, Gomez argues that the "continuing violation" theory saves his allegations from being time-barred. This court, however, finds Gomez's argument to be without merit.

Courts have utilized the equitable theory of continued violation "[w]here the unlawful employment practice manifests itself over time, rather than as a series of discrete acts." *Waltman v. International Paper, Co.,* 875 F.2d 468, 474 (5th Cir. 1989) (quoting *Abrams v. Baylor College of Medicine,* 805 F.2d 528, 532 (5th Cir. 1986)). In undertaking this equitable consideration, the focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights. *Glass v. Petro-Tex Chem. Corp.,* 757 F.2d 1554, 1560-61 (5th Cir. 1985). Here, the summary judgment evidence indicates that Gomez was aware of the alleged discriminatory conduct in June 1992 when he wrote a letter to State Farm's President. In his letter, Gomez noted that he was the subject of "racial remarks" stemming from Smith's effort to create a hostile work environment and that State Farm personnel had visited body shops to "demean and criticize Mr. Gomez's work.[17]" He further wrote that "...the conduct initiated by Mr. Smith is adversely affecting the status of employment because of his race and his national origin.[18]" Gomez's full knowledge of the Defendants' alleged discriminatory acts in June 1992 therefore triggered Gomez's duty to assert his rights. Gomez filed his EEOC charge September 16, 1996, outside the three hundred days allowed

---

[17]Docket No. 26, Ex. A.

[18]Docket No. 24, Ex. A.

9

by the limitations statute. Accordingly, Gomez's hostile work environment claim in violation of Title VII is time barred and summary judgment is granted in regards to this claim.

2.      Section 1981

The Fifth Circuit has consistently applied the Texas two-year limitations period for personal injury torts to section 1981 actions. *Price v. Digital Equipment Corp.*, 846 F.2d 1026, 1028 (5th Cir. 1988). Defendants argue that certain allegations by Gomez are barred under the two year statute of limitations for section 1981 claims. As discussed above, this Court finds that Gomez's claims of discriminatory and retaliatory discharge are based on his termination. Gomez was terminated on April 15, 1996. This lawsuit was filed on May 19, 1997, well within the two year period.

*Liability under Title VII and Section 1981*

Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer to discharge or otherwise discriminate against an individual with respect to that person's compensation, terms, conditions, or privileges of employment, or to adversely affect the person's status as an employee because of their race. 42 U.S.C.A. § 2000e-2(a). Section 1981 provides in part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C.A. §1981(a). Section 1981 applies to contractual relationships in the employment setting and "is designed to include a federal remedy against discrimination in employment on the basis of race." *Adams v. McDougal,* 695 F.2d 104, 108 (5th Cir. 1983).

To determine whether liability exists under Title VII and section 1981, the Fifth Circuit applies the burden-shifting analytical framework first established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See e.g, Long v. Eastfield College,* 88 F.3d 300, 304 (5th Cir. 1996). Under the

CHPDF - www.faxto.com

*McDonnell Douglass* framework, the plaintiff bears the initial burden to prove a prima facie case of discrimination by a preponderance of the evidence. *McDonnell Douglas,* 411 U.S. at 801-803. Once a plaintiff establishes a prima facie case, an inference of discrimination arises. *Id.* at 792. The burden of production then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Id.* at 801-803. If the proffered reason supports a nondiscriminatory finding, the inference of discrimination raised by the plaintiff disappears. *Texas Department of Affairs v. Burdine,* 450 U.S. 248, 253-57, n. 10 (1981). However, the plaintiff can then prove that the defendant's articulated reason is false, merely a pretext, and that the real reason for the actions was a discriminatory one. *St . Mary's Honor Society v. Hicks,* 509 U.S. 502, 510-11 (1993); *Burdine,* 450 U.S. at 251-253; *McDonnell Douglas,* 411 U.S. at 803-805. Direct evidence of an employer's discriminatory intent is not required. *Grimes v. Texas Dep't of Mental Health and Mental Retardation,* 102 F.3d 137, 140 (5th Cir. 1996). A plaintiff may prove through circumstantial evidence that a defendant's articulated nondiscriminatory reason was pretextual. *Id.* Speculation and belief are insufficient to create a fact issue of pretext. *See Britt v. Grocers Supply Co,* 978 F.2d 1441, 1451 (5th Cir. 1992). Nor can pretext be established by mere conclusory statements of a plaintiff who feels that he has been discriminated against. *See E.E.O.C. v. Exxon Shipping Co.,* 745 F.2d 967, 976 (5th Cir. 1984).

1.     Individual Liability

Title VII makes it an unlawful practice for an employer to discriminate against an individual. 42 U.S.C. A. § 2000e-2(a)(1). While Title VII defines the term employer to include an agent of the employer, the Fifth Circuit does not interpret the statute as imposing individual liability. 42 U.S.C. § 2000e(b); *Indest v. Freeman Decorating Inc.,* 164 F.3d 258, 262 (5th Cir. 1999). Because a Title

11

VII suit against an employee is actually a suit against the corporation, a party may not maintain a suit against both an employer and its agent as it would impose double liability. *Indest,* 164 F.3d at 262. Accordingly, Gomez may not bring a cause of action against the individual Defendants Saenz, Sanchez and Smith for alleged violations of Title VI and summary judgment is warranted.

    2.      Discriminatory Discharge

To establish a prima facie case of discriminatory discharge, Gomez must show that: (1) he is a member of a protected group; (2) he was qualified for the position he held; (3) he was discharged from the position; (4) he was replaced by a non-member of the protected class or non-members received more favorable treatment because of their status as non-members of the protected class. *Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 395 (5th Cir. 1995); *Quintanilla v. K-Bin, Inc.,* 8 F. Supp.2d 928, 934 (S.D. Tex. 1998).

Neither party briefed the prima facie cases for hostile work environment, or discriminatory and retaliatory discharge. Rather, both parties assumed *arguendo* a prima facie case and began their arguments at the second step of the *McDonnell Douglass* analytical framework. However, this Court must first determine whether Gomez has satisfied his initial burden and established prima facie cases.

The first three elements of a prima facie case of discriminatory discharge are clearly established. Gomez is a member of a protected class-he is Hispanic. He was qualified for the position he held,[19] and he was discharged. However, it is the fourth element that Gomez has failed to establish. Gomez fails to aver that he was replaced by an individual outside his protected class.

---

[19]A review of the record reveals that throughout Gomez's employment with State Farm, he received "expected performance" ratings, one "below expected performance" rating, and two pay increases. Viewing the evidence in the light most favorable to Gomez, the nonmovant, this court finds that Gomez was qualified for his job as an estimator.

Further, Gomez presents no evidence that similarly situated non-Hispanics were treated more favorably than Hispanics. Simply, Gomez alleges that, of the three estimators under Smith's supervision[20], only his work was scrutinized and reinspected. However, Gomez's deposition testimony indicates that he has no personal knowledge as to whether the other estimators' work was subject to reinspection or review.[21] At best, his allegations are speculative and conclusory. This court concludes that Gomez presents no evidence that similarly situated non-Hispanics were treated more favorably than Hispanics.

Accordingly, this Court finds that Gomez has failed to establish a prima facie case of race discrimination under Title VII and section 1981 and there is no need to proceed to the second or third steps of the *McDonnell Douglas* framework. The Defendant's Motion for Summary Judgment is granted on Gomez's discriminatory discharge claims under Title VII and section 1981.

3.    Retaliatory Discharge

A plaintiff establishes a prima facie case for unlawful retaliation by proving that (1) that he engaged in activity protected by Title VII; (2) that an adverse employment action occurred; and (3) that a causal link existed between the protected activity and the adverse employment action. *Scrivner v. Socorro Independent School District,* 169 F.3d 969, 972 (5th Cir. 1999).

Gomez contends that his retaliatory discharge was the result of Gomez's complaints of discrimination to State Farm. Defendants argue that assuming Gomez can establish that he engaged

---

[20]In his deposition, Defendant Smith indicates that he supervised three estimators in the McAllen, Texas office, Gomez, Jerry Trevino (Trevino), and Guy Cole (Cole). (Docket No. 22, 8:21-25). Smith also testified that of all the estimators, he socialized only with Trevino inviting him to his home for barbecues and to watch games. (Docket No. 22, 14:8-22).

[21]Docket No. 22, Ex. F, 92:2-25.

13

in a protected activity, Gomez offers no evidence of a causal connection to his termination.  Before this court inquires into the causal connection requirement, the court must first determine whether Gomez has demonstrated the first element of his prima facie case-that he engaged in a "protected activity" as defined by 42 U.S.C. § 2000e-3(a).

An employee has engaged in activity protected by Title VII if he has either (1) "opposed any practice made an unlawful employment practice" by Title VII or (2) "made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing" under Title VII.  42 U.S.C. § 2000e-3(a); *Long,* 88 F.3d at 304.  In the instant case, since Gomez's EEOC charge was not filed until after the alleged retaliatory discharge, Gomez falls squarely within the "opposition clause," 42 U.S.C. § 2000e-3(a)(1), rather than the "participation clause," 42 U.S.C. § 2000e-3(a)(2).  *Byers v. Dallas Morning News, Inc.,* 1999 WL 20953, *10 (N.D. Tex Jan. 7, 1999).  Under the "opposition clause," Gomez does not have to prove that the Defendants' practices were actually unlawful, but only that he had a reasonable belief that the employer was engaged in unlawful employment practices. *Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1140 (5th Cir. 1981), *cert. denied,* 455 U.S. 1000, 1002 (1982); *Byers,* 1999 WL 20953 at *10.  However, an employee's subjective beliefs that he suffered an adverse employment action as a result of discrimination alone is not sufficient. *Grizzle v. Travelers Health Network, Inc.,* 14 F.3d 261, 268 (5th Cir. 1994).

Gomez argues that he has produced evidence which indicates he opposed the Defendants unlawful employment practice, and which constitutes his participation in a protected activity under Title VII.  First, Gomez refers to the letter written by his attorney to State Farm's president in June of 1992 complaining of "racial remarks" and a hostile work environment.[22]  Second, Gomez contends

---

[22]Docket No. 22, p.27.

14

that he complained to Mario Martinez, Gomez's supervisor while employed in Harlingen. *Id.*

a.    The Letter

In his June 1992 letter, Gomez complained of (1) "racial remarks" made by co-workers and individuals in management and (2) the incidents whereby State Farm personnel had visited body shops to review and reinspect his work.   The letter, without stating specific dates, generally indicates that Gomez was the subject of racial remarks during his employment with State Farm. At the time the letter was issued, Gomez had been employed nine years with State Farm in three South Texas offices.[23]   The record, however, only details those incidents that allegedly occurred while Gomez worked in Harlingen and McAllen.   Therefore, in considering whether the allegations establish participation in a protected activity under Title VII, this court narrows its inquiry to the activity in these two cities.

A detailed reading of the record indicates that Gomez was employed in Harlingen from 1983 to 1987 under Mario Martinez.[24]   As to Gomez's allegations during this time, the uncontroverted summary judgment evidence shows that Gomez cannot identify the name of any co-worker or supervisor who allegedly engaged in the name calling.[25]   In fact, Gomez acknowledges that while employed at the Harlingen office, he also engaged in name calling towards another employee.[26]   To the extent that Gomez believes that the alleged racial remarks made while employed in Harlingen was evidence of race discrimination, this court finds that Gomez's subjective belief was not objectively

---

[23]Docket No. 26, Ex. A.

[24]Docket No. 9, Ex. A, 54: 1-11.

[25]Docket No. 9, Ex. A, 55:17-25, 56:1-25.

[26]Docket No. 9, Ex. A, 56:19-25.

CMPDF - www.fastio.com

reasonable.

Gomez was subsequently employed in McAllen from 1990 until his discharge in April 1996. However, the court limits its analysis to the period from 1990 through June 1992, the date the letter was issued to State Farm. During this time, the individual Defendants were also employed in McAllen and Smith was Gomez's supervisor. As evidence of disparate treatment in McAllen, Gomez genearlly contends that he was the subject of more racial remarks and alleges that only his work was scrutinized and reinspected.

In his deposition, Gomez admits that the three individual Defendants never called Gomez any derogatory names.[27] Further, he presents no summary judgment evidence indicating the names of those co-workers allegedly engaged in the name calling.[28] Gomez testifies that he issued a letter to Human Resources identifying such individuals, yet he did not produce any evidence of the letter and indicates he does not remember where he put his copy.[29] Finally, Gomez admits in his deposition that the alleged name calling could sometimes be characterized as "horseplay."[30] This court finds no evidence indicating that Gomez's complaints of race discrimination were objectively reasonable.

In regards to Gomez's allegations of discriminatory scrutiny, Gomez's testimony indicates that he has no personal knowledge as to whether the other two estimators, Cole and Trevino, were subject to reviews and reinspection of their work. He presents no evidence which shows other employees were treated differently or that indicates why a review of his work would constitute race

---

[27]Docket No. 9, Ex. A, 110:1-14.

[28]Docket No. 22, Ex. F. 118:9-25.

[29] *Id.*

[30] *Id.*

discrimination.  At best, Gomez's allegations are conclusory and speculative.[31]  This court finds that it is not objectively reasonable to jump from an observation that one's work is being evaluated to the conclusion that race discrimination is the underlying motive.

       b.     Complaint to Mr. Martinez

Gomez mentions that he complained to Martinez of the alleged name calling during his Harlingen employment.  However, as already noted above, this court finds that it is not objectively reasonable to conclude that race discrimination was the underlying explanation for  the alleged name calling incidents in Harlingen.

Even viewing the evidence in the light most favorable to Gomez, the non-moving party, this Court finds that Gomez has failed to present sufficient evidence showing that his alleged complaints of race discrimination were objectively reasonable.  Accordingly, this Court finds that the opposition clause requirements of 42 U.S.C. § 2000e-3(a)(1) have not been satisfied and Gomez has failed to establish participation in activity protected by Title VII.  Accordingly, Gomez cannot prove  a prima facie case of retaliatory discharge and there is no need to proceed to the second and third steps of the *McDonnell Douglas* analysis.  Therefore, the Defendants' Motion for Summary Judgment will be granted with regard to Gomez's retaliatory discharge claim under both Title VII and section 1981.

## STATE LAW CLAIMS

### *Negligent Hiring/Training/Supervision Claims*

Gomez alleges that State Farm is liable for negligent hiring, training, and supervision based on Gomez's alleged exposed to a hostile work.  It is well established that the Texas Workers' Compensation Act ("TWCA") bars actions by employees against employers for negligence and gross

---

[31]Docket No. 22, Ex. F, 92:2-25.

negligence. TEX. LAB. CODE ANN. § 408.001 (Vernon 1996); *Ward v. Bechtel Corp.*, 102 F3d 199, 203 (5th Cir. 1997). The TWCA provides the exclusive remedy for injuries sustained by an employee in the course of his employment as a result of his employer's negligence. *Ward*, 102 F.3d at 203. The uncontroverted summary judgment evidence establishes that State Farm provided workers' compensation insurance coverage to Gomez during his employment and that Gomez did not retain his common law right to recover pursuant to TEX. LAB. CODE ANN. § 406.34. Consequently, Gomez's recovery under a negligence theory is foreclosed by the TWCA.

*Intentional Infliction of Emotional Distress*

The basis for Gomez's claim for intentional infliction of emotional distress is not clear from his pleadings. In his Original Complaint, Gomez simply alleges that "the foregoing conduct constitutes intentional infliction of emotional distress." However, Gomez fails to specifically detail the conduct. In his Response, Gomez avers that was "exposed to harassment[32]," " ... forced to endure a working environment charged with epithets" and fired when he complained of such conduct. Such claims, Gomez argues, are sufficient to permit recovery for intentional infliction of emotional distress.

To recover on a claim for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the conduct was "extreme" and "outrageous;" (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the resulting emotional distress was severe. *GTE Southwest, Inc. v. Bruce, et al.*, 42 Sup. Ct. J. 907, 1999 WL 450707 (July 1, 1999); *Twyman v. Twyman*, 855 S.W.2d 619 (Tex. 1993). In Texas, claims

---

[32]Viewing the evidence in the light most favorable to Gomez, this court finds that the "harassment" Gomez complains of is the allegedly unjustified review and critique of his work.

for intentional infliction of emotional distress are governed by the two-year statute of limitations set forth in TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). *Patin v. Allied-Signal, Inc.,* 865 F. Supp. 365, 369 (E.D. Tex. 1994), *aff'd,* 69 F.3d 1 (5th Cir. 1995). Gomez filed his lawsuit on May 19, 1997. Therefore, those incidents that occurred on or before May 19, 1995, two years preceding this suit, are not actionable.

Accordingly, to the extent that Gomez relies on "harassment" and the working environment charged with epithets as a basis for his claim, these allegations are time barred. The conduct Gomez complains of occurred prior to June 1992 as it formed the basis of Gomez's June 1992 letter of complaint to State Farm. These allegations fall outside the statutory period for recovery and thus, are not actionable. Therefore, the only allegation left in support of his claim is Gomez's termination. However, termination alone is insufficient to constitute "extreme and outrageous" conduct and to support a claim for intentional infliction of emotional distress. *Wornick Co. v. Casas,* 856 S.W.2d 732 (Tex. 1993). The act of discharge, in and of itself, falls short even if coupled with bickering, insults, and embarrassments. *MacArthur v. University of Tex. Health Ctr.,* 45 F.3d 890, 898 (5th Cir.1995). Because Gomez has proffered no evidence to support his claim, the Defendants are entitled to summary judgment for intentional infliction of emotional distress.

### *Tortious Interference with Contract*

In his Original Complaint, Gomez generally avers that the Defendants deliberately lied to prospective employers about his employment history, "black balled" him, and threatened to cease doing business with other body shops if they employed Gomez. However, in his Response, Gomez argues simply that "the Defendants told West Point Lincoln Mercury that he could no longer be employed there." This court construes the latter allegation to form the crux of his claim for tortious

19

interference .

In order to prove a claim for tortious interference with contract, a Plaintiff must establish: (1) the existence of a contract, subject to interference; (2) an occurrence of a willful and intentional act of interference; (3) actual damages or loss; and (4) that the act was a proximate cause of Plaintiff's damages. *Jackson v. Dole Fresh Fruit Company*, 921 F. Supp. 454 (S.D. Tex. 1996); *Friendswood Dev. Co. v. McDade & Co.*, 964 S.W.2d 280, 282 (Tex. 1996) .

Gomez has presented no evidence that any of the Defendants engaged in any willful and intentional act of interference with regard to Gomez's employment at West Point.   Gomez's deposition testimony indicates that he was never told by West Point that State Farm required or forced his discharge from their employment.[33]   He further testified that he has no reason to believe that the Defendants had anything to do with his discharge from West Point. [34]   In fact, the uncontroverted summary judgment evidence refutes the notion that the Defendants interfered with Gomez's employment.  West Point's deposition by written questions indicates Gomez was discharged due to his inability to perform assigned work and provides a detailed explanation of the incidents leading to his termination.[35]  Because Gomez has brought forth no evidence to establish a claim for tortious interference with contract, summary judgment is warranted on this claim.

Based on the foregoing Memorandum and Opinion, an Order will entered granting the Defendants' Motion for Summary Judgment and dismissing the Plaintiff's case.

---

[33]Docket No. 9, Ex. A, 41: 1-25.

[34]Docket No. 9, Ex. A, 43:1-25 & 44:1-25.

[35]Docket No. 9. Ex. D, Bates Stamp  No. 6

DONE in Brownsville, Texas this _22ND_ day of _JULY_____, 1999.

_____
John Wm. Black
United States Magistrate Judge

21